IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**Stuart J. Skinner** )
    **Plaintiff** )
     )
    v. )    Civil Action No. 06-416-JJF
     )
**Major Holman, and** )
**Deputy Warden Pierce** )
    **Defendants** )

FILED
OCT - 3 2007
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

BD Scanned

**PLAINTIFFS OPENING RESPONSE TO DEFENDANTS REQUEST FOR
PRODUCTION OF DOCUMENTS AND THINGS DIRECTED TO PLAINTIFF**

**Request No. 1:**

1. All grievances, complaints, or other correspondence relating to, regarding or arising out of incidents alleged in Plaintiffs Complaint, including, but not limited to all grievances or complaints submitted by Plaintiff to Department of Correction personnel, responses thereto, and any related correspondence between Plaintiff and Department of Correction personnel.

**RESPONSE**

1a. Notice of Disciplinary Hearing (Form #127)
1b. Disciplinary Hearing Decision
1c. Letter to Deputy Warden Pierce
1d. Delaware Correctional Center Memorandum (Form #456) Dated 6/4/06
1e. Delaware Correctional Center Memorandum (Form #456) Dated 1/12/06

At this time Plaintiff does not possess any other related documentation, as Plaintiff acquires further documentation it will be forwarded as a Supplemental Response for Production of Documents.

**Request No. 2:**

2. All correspondence relating to, regarding or arising out of the incidents alleged in Plaintiffs Complaint, including but not limited to, any correspondence between friends or family members of Plaintiff or other inmates and Department of Correction personnel.

**RESPONSE**

Plaintiff objects to this request as Defendants are fully aware of the Housing Rules at the Delaware Correctional Center as they are the Security Chief and the Deputy Warden respectively.

The Housing Rules prohibit an inmate from possessing more than 12 pieces of mail at any time, excluding legal privileged correspondence, and had Plaintiff retained these materials, Plaintiff would be subject to having the materials confiscated and subject to disciplinary action. As to Plaintiffs outgoing correspondence, the Plaintiff is an incarcerated, pro se litigant, and as such, has no direct access to a photo-copier or any other means of reproducing a document. To possess copies of outgoing correspondence would have required Plaintiff to write each letter at least twice.

The Housing Rules also specifically prohibit inmate-to-inmate correspondence. To do so is considered a "major" security breach and would subject the Plaintiff to immediate transfer to Maximum Security.

As Plaintiff has already provided his correspondence to Department of Correction personnel in response to Request No. 1, that leaves only legal correspondence, and that is of an incoming nature.

    2a.    Letter from Charles M. Oberly, III dated 3/17/04

    2b.    Letter from Warden Thomas Carroll to Charles M. Oberly, III dated 3/8/04

    2c.    Letter from Charles M. Oberly, III dated 7/27/04

    2d, e, f, Pages 6, 7, 8 of transcript from Plaintiffs Pardon Board Hearing which shows that he was written up for attempted escape, and that he was found not guilty. Note Page 7, paragraph 3, marked as Exhibit 2(e).

**Request No. 3:**

3.    Any statements, declarations, petitions, or affidavits relating to, regarding or arising out of the incidents alleged in Plaintiffs Complaint and any statements, declarations, or affidavits of Plaintiff, other inmates, or witnesses to the allegations I the Complaint.

**RESPONSE**

Plaintiff, at this time, objects to this request. Plaintiff is a pro se litigant and is incarcerated. As such, it is very difficult for Plaintiff to communicate with witnesses and obtain affidavits from witnesses. Most persons with knowledge of these allegations are under the Defendants chain of command. To produce the documents before all of Plaintiffs witnesses have signed their affidavits could adversely affect the testimony the Plaintiffs witnesses are willing to provide. Upon completing the acquisition of all of the affidavits, Plaintiff will provide copies of all such documents to the Defendants and their counsel.

**Request No. 4:**

4.    All criminal history records for Plaintiff from any other State besides Delaware for the past 15 years.

**RESPONSE**

Plaintiff has no criminal history for the past 15 years.

**Request No. 5:**

5. All medical records for Plaintiff relating to, regarding or arising out of the incidents alleged in Plaintiffs Complaint.

**RESPONSE**

Plaintiff objects to this Request, the Complaint has no allegation asserting any medical claim.

**Request No. 6:**

6. All medical records for Plaintiff for the past 15 years.

**RESPONSE**

Plaintiff objects to this Request as it has no relevancy to the facts of the Complaint.

**Request No. 7:**

7. Any and all document(s) referenced or identified in Plaintiffs Responses to Interrogatories served contemporaneously herewith.

**RESPONSE**

Plaintiff objects to this Request because Prison rules prohibit the Plaintiff from possessing most of the documents referenced by Plaintiff, and will be part of

4

Plaintiffs Document Production Request. Any other documents have already been provided in response to Request's No's. 1 and 2.

*/s/ Stuart Skinner*
Stuart J. Skinner
SBI# 00246587, S-1 Bldg
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

Plaintiff, pro se

Dated: October 2, 2007

## CERTIFICATE OF SERVICE

I, Stuart J. Skinner, do hereby certify that I have served (2) true and correct copies of the attached "Response to Defendants Request for Production of Documents and Things Directed to Plaintiff" on:

Eileen Kelly, I.D. #2884
Deputy Attorney General
Carvel State Office Building
820 North French Street
Wilmington, Delaware 19801

Major David Holman
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

Deputy Warden David Pierce
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

By placing same into the United States Postal Service at the Delaware Correctional Center.

Respectfully submitted,

*Stuart Skinner*

Stuart J. Skinner
SBI# 00246587, S-1 Bldg
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

Plaintiff, pro se

Dated: October 2, 2007

6

DR # _____

Date: 2-22-04

DCC Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

## NOTICE OF DISCIPLINARY HEARING – FOR MINOR/MAJOR OFFENSE

To: Inmate: Skinner, Stuart     SBI#: 00 246587     Housing Unit: W-1

1. You will be scheduled to appear before the Hearing Office to answer charges pending against you. (Staff are to explain the charges as listed on the 122).

2. At that time, a hearing will be held to determine whether you violated Institutional Rule(s) as alleged in the attached Disciplinary Report.

    How do you plead?   ☐ Guilty   ☒ Not Guilty

3. A "Minor Offense" is a rule violation in which the extent of the sanction to be imposed shall be restricted to:
    a. Written Reprimand.
    b. Loss of one or more privileges for a period of time **of more than 24 hours but less than 15 days.**

4. A "Major Offense" is a rule violation in which the extent of the sanction to be imposed shall be restricted to:
    a. Loss of one or more privileges for a period **of more than 15 days but less than 60 days.**
    b. Confinement to assigned quarters for a period of time not to exceed 30 days.
    c. Isolation confinement for a period of time not to exceed 15 days.
    d. Loss of good time for a period of time not to exceed 30 days. (Forfeiture of accumulated good time shall be subject to the approval of the Commissioner or his designee.)

5. You have the rights in the disciplinary process as stated on the lower and back of this page. These have been fully explained to you at the time of this notification.

6. Counsel requested?   ☐ Yes   ☒ No   Name of Counsel: SELF

7. Confront accuser?   ☐ Yes   ☒ No

8. Witness requested?   ☐ Yes   ☒ No   Name of Witness: _____

I certify that on FEB 23 04 at 0645,
         (Date)        (Time)

I served upon the above inmate this notice of Disciplinary Hearing for Minor/Major Offense and the Disciplinary Report is attached hereto.

I have received copies of 122 & 127 and understand my rights as Form #127 has been read to me.

_____
(Employee's Signature & Title)

_____
(Inmate's Signature)

Page 1

Form 127: May 30, 2003   DACS

1(A)

DR # 1007663

Date: 3/26/04

DCC Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

## DISCIPLINARY HEARING DECISION

☐ Class I (Major)    ☑ Class II (Minor)    ☐ Summary (24 Hour LOAP)

Inmate: Skinner Stuart                       SBI#: 00 246587
Institution: Delaware Correctional Center    Hearing Date: 3/26/04    Time: 0939

Inmate Present: ☑ Yes   ☐ No

Reason (If No): _____

Violation: FTO, PNIX
Inmate Plea: Guilty
Inmate Statement: _____

Witness Name: _____
Testimony: _____

Witness Name: _____
Testimony: _____

Witness Name: _____
Testimony: _____

Decision: ☑ Guilty   ☐ Not Guilty   ☐ Further Investigation
Rational: Per report and plea inmate found guilty

Sanctions: written reprimand
Hearing Officer's Signature: Harvey Savage

I understand that I may appeal the decision of the Hearing Officer (or Shift Supervisor in the case of a Summary Sanction) to the Commissioner of Correction or his designee. I must complete a Disciplinary Appeal Form within 72 hours immediately following the hearing and mail it to the DCC Hearing Office.

☐ I do intend to appeal.
☑ I do not intend to appeal.

inmate unable to sign cuffed in rear
Inmate's Signature

### ORDER TO IMPLEMENT SANCTIONS

☐ Inmate does not wish to appeal          ☐ Appeal has been denied by Commissioner or Designee
☐ Sanctions have been modified            ☐ Time Limit (72 hours since hearing) for appeal has expired

Modifications: _____
It is hereby ordered to implement the sanctions or modified sanctions on Date: _____ Time: _____

RECEIVED
OCT 2 1 2004  10-11-04
DCC DEPUTY WARDEN

Deputy Warden Pierce

I'm writing you to ask for your help I've asked everyone I can ask and they all say I should get my job back but no one will help me. I had 4 different jobs offered and they all called Major Holman, and all 4 were told by Holman I'm black balled and will never work again. Now you know what happen this is all over a snitch note and you even found no merit to this. So I'm at a loss Ms Kemp wont classifie me she wont even tell me my points. LT Porter said he won't do anything because he doesn't want to make Major Holman mad at him. Now how can I get something done when everyone is afraid of Holman. Again I'm being punished for no reason I counted my own points and I come up with 5 but yet I'm in C-Bld I have no major write ups and they wont let me work what can I do please help me. Thank you

Stuart Skinner
246587
C-Bld AL3

1(C)

Appendix E

# DELAWARE CORRECTIONAL CENTER --- MEMORANDUM

TO: Inmate Stuart Skinner, SBI# 246557, Housing Unit 19
VIA: Counselor Kramer
FROM: I.B.C.C.
DATE: 6/4/04
RE: Classification Results

Your M.D.T. has recommended you for the following: Med. AA/addiction Support, Aup, MH

The I.B.C.C.'s decision is to:

✓ Approve
___ Not Approve
___ Defer
___ Recommend
___ Not Recommend

**BECAUSE:**

___ Lack of program participation
___ Pending disciplinary action
___ Gradual phasing indicated
___ Open charges
___ Prior criminal history
___ Failure to follow your treatment plan in that you _____

___ Time remaining on sentence
___ Prior failure under supervision
___ Poor institutional adjustment
___ Serious nature of offense

___ You present a current and continuous danger to the safety of staff, other inmates, or the good order of the Institution. Explanation: _____

OTHER: Rev 6/05

**ADDITIONAL COMMENTS:**

___ Develop/continue treatment plan with counselor

You will be expected to address the following: _____

Copy to: Classification
Inmate
Institution File

Form #456 (3 Part NCR)
Revised 11/97

Appendix E

# DELAWARE CORRECTIONAL CENTER — MEMORANDUM

TO: Inmate _Skinner, Stuart_, SBI# _246587_, Housing Unit _NE_
VIA: Counselor _Minor_
FROM: I.B.C.C.
DATE: _1-12-06_
RE: Classification Results

Your M.D.T. has recommended you for the following: _Min, Options,_
_Mental Health_
_Cont Keyboarding, Addiction Support Grp._

The I.B.C.C.'s decision is to:

✓ Approve _____
___ Not Approve _____
___ Defer _____
___ Recommend _____
___ Not Recommend _____

**BECAUSE:**

___ Lack of program participation                ___ Time remaining on sentence
___ Pending disciplinary action                  ___ Prior failure under supervision
___ Gradual phasing indicated                    ___ Poor institutional adjustment
___ Open charges                                 ___ Serious nature of offense
___ Prior criminal history
___ Failure to follow your treatment plan in that you _____

___ You present a current and continuous danger to the safety of staff, other inmates, or the good order of the Institution. Explanation: _____

OTHER: _Rev 1/07_

**ADDITIONAL COMMENTS:**

___ Develop/continue treatment plan with counselor

You will be expected to address the following: _____

Copy to: Classification
        Inmate                           Form #456
        Institution File     1(e)         Revised 11/97

# OBERLY, JENNINGS & RHODUNDA, P.A.

800 Delaware Avenue - Suite 901
P. O. Box 2054
Wilmington, Delaware 19899

Charles M. Oberly, III
Kathleen M. Jennings
William J. Rhodunda, Jr.

Karen V. Sullivan

Writer's E-Mail: coberly@ojlaw.com

(302) 576-2000
Fax (302) 576-2004
E.I.No. 51-0364261

March 17, 2004

Stuart J. Skinner
#00246587 – SHU Building
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

Dear Stuart:

    I received a telephone call from your father regarding your current situation. It is my understanding you have not been moved. On the same day I spoke with your father, I received the enclosed letter from the Warden. I would tend to believe my letter has had its desired effect.

    Very truly yours,

    CHARLES M. OBERLY, III

CMO,III/dq

Enclosure

cc: John Skinner

Dictated, but not read due to absence from the office.

2 (A)



OJR
MAR 11 2004

**STATE OF DELAWARE
DEPARTMENT OF CORRECTION
OFFICE OF THE WARDEN
DELAWARE CORRECTIONAL CENTER**
1181 Paddock Road
SMYRNA, DELAWARE 19977
Telephone: (302) 653-9261
Fax: (302) 653-2855

March 8, 2004

Mr. Charles M. Oberly, III
Oberly, Jennings & Rhodunda, P. A.
800 Delaware Avenue – Suite 901
Wilmington, DE 19899

Re   Inmate Stuart Skinner #00246587

Dear Mr. Oberly;

This will acknowledge receipt of your correspondence of March 2, 2004 regarding Stuart Skinner, an inmate housed at the Delaware Correctional Center.

Please be advised that Inmate Skinner was transferred pursuant to an internal investigation. Once this investigation has been completed, Inmate Skinner's status and housing placement will be reviewed.

Please contact Major Dave Holman should you have any questions or concerns regarding this matter.

Sincerely,

Thomas L. Carroll
Warden V

TLC/sw
Attachments
Cc:   Deputy Warden Betty Burris
      Deputy Warden Larry McGuigan
      Major Dave Holman
      File

2 (b)

# OBERLY, JENNINGS & RHODUNDA, P.A.

800 Delaware Avenue - Suite 901
P. O. Box 2054
Wilmington, Delaware 19899

Charles M. Oberly, III
Kathleen M. Jennings
William J. Rhodunda, Jr.

Karen V. Sullivan

Writer's E-Mail: coberly@ojlaw.com

(302) 576-2000
Fax (302) 576-2004
E.I.No. 51-0364261

July 27, 2004

Stuart J. Skinner
#00246587 – Unit 22
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

Dear Stuart:

    I received your letter July 8, 2004. I hope the Delaware Correctional facility will move you, but is something I have no control over. I have written two letters and agree with you that the process does not seem to be fair. I want to be careful about pushing too hard because if I alienate anyone, it may be taken out on you. If you have not been moved with the next thirty days or so, drop me a note and I will again look at the matter.

    As far as the State's response is concern, I have noted your comments and will taken them into consideration when the matter comes before the Board.

Very truly yours,

CHARLES M. OBERLY, III

CMO,III/dq

2(c)

October 27, 2005                                             6

recommendation from them in the future (i.e., complete his GED, continue program participation and remain write-up free). They also noted that he needs to show respect for the Institution by following its rules.

Mr. O'Neill excused himself from the hearing. Mr. Welch took over the duties of the State's representative.

**STUART SKINNER:** Charles M. Oberly, III, Esq. represented Mr. Skinner who was seeking a commutation of his 1991 conviction for Murder 2nd, Attempted Murder 1st, Assault 1st and three counts of Possession of a Deadly Weapon During the Commission of a Felony During the Commission of a Felony. Mr. Oberly stated that he was not going to try to diminish the seriousness of the incident. This was Mr. Skinner's second appearance before the Board, his first application was denied in February 2003. Since his first petition, both the applicant's mother and grandmother have passed away, and his brother is seriously ill. Mr. Oberly said that these losses do not change any of the facts the Board would consider for a commutation, but he opined that it was time for Mr. Skinner be allowed to grieve with his remaining family members. Mr. Oberly noted that the applicant was convicted over 16 years ago. Mr. Skinner was addicted to Valium and alcohol at the time of the incident. In a state of extreme intoxication, he confronted his ex-girlfriend (Renea Pinder) outside of her trailer. According to Mr. Oberly, the applicant accepts full responsibility and said that he did not go to the trailer with the intent to kill anyone. He went to confront Ms. Pinder about their relationship. When the victim (i.e., Ms. Pinder's new boyfriend – Edmund Hammelbacher) came to the porch to intervene, the situation got out of hand. Mr. Oberly advised that at the trial, the applicant's defense should have been extreme emotional stress. He added that despite the fact that Mr. Skinner used drugs, he had no prior criminal record. While the State asked for a maximum sentence of 180 years, Judge Henry DuPont Ridgley sentenced Mr. Skinner to 65 years. Unfortunately, the State did not take into consideration the applicant's cognitive disabilities, his inability to decode messages, and the fact he was under the influence at the time of the incident. Furthermore, Mr. Skinner waited 16 years before he appeared before the Board of Pardons. He has had only one disciplinary write-up, which occurred ten years ago. Mr. Oberly stated that Mr. Skinner was not asking to be released immediately, but was asking that the programs he has participated in while incarcerated be considered for a reduction in his sentence. He has completed his GED (Graduate Equivalency Diploma), a number of vocational courses and a 12 week Leadership Dynamics class. He is also a member of Alcoholics Anonymous (AA) and has attended the Alternative to Violence Programs. Mr. Oberly directed the Board's attention to letters of recommendation from correction officers who he opined recognize Mr. Skinner's "work ethic and trustworthiness." There are letters from family members as well.

The following individuals spoke on Mr. Skinner's behalf:

John Skinner, his father, stated that the entire family is behind the applicant, and he knows the applicant is extremely remorseful. He said that his son is not a career criminal nor is he the same man he was when he entered the system. Mr. John Skinner opined that the applicant could be a valuable asset to society upon his release and could live with family and work with his brother.

John Skinner, Jr., his brother, addressed the Board. He said that he knew this was a tragic crime, but his brother has used his time while incarcerated to redirect his life and rehabilitate himself. Mr. John Skinner, Jr. opined that this was a crime of passion. He noted that the Skinner family was very sorry for the victims of this incident; however, it was time that the applicant be allowed to come live with his family, who welcomes him. He added that his brother would be gainfully employed and would contribute to society.

Mr. Skinner spoke on his own behalf and thanked the Board for the opportunity to speak to them. He said he pled guilty at the time of the incident because he did not want his family or the victim's family to suffer through a trial. The applicant stated that he was in a bad relationship and on drugs at the time of the incident, but he added that he takes full responsibility for his actions. Mr. Hammelbacher was seeing Ms. Pinder in the home she had shared with him (the applicant). He



October 27, 2005                                      7

planned to go to the home to reconcile with her when he realized she was seeing Mr. Hammelbacher. Mr. Skinner said that he was "suicidal" and did not intentionally go there to shoot anyone. The incident "got out of hand" when Mr. Hammelbacher stepped out on the porch and interfered with any interaction he might have with Ms. Pinder.

In regard to Mr. Skinner's specific request, Mr. Oberly advised that they were proposing a reduction in sentencing that would reduce the current sentence to a total of 26 years. The original sentence was 65 years Level V; 15 years mandatory with a short time release date of 2033. If the Board were to reduce his sentence to 26 years, his short time release would be at the 20 year point.

The Board asked Mr. Skinner to address his write-up regarding a planned escape. The applicant stated that he refused to help a fellow inmate by hiring a friend in the maintenance shop. The inmate dropped "a snitch note" on him. The Department of Correction (DOC) found him not guilty. All other write-ups were because he was caught in the wrong place at the wrong time (i.e., getting clothes after a code green was called, extra work when a lock down was ordered, etc.). The Board asked questions regarding his lack of participation in mental health counseling for a number of years; his failure to further his education after receiving his GED and his failure to attend additional programs to address the issues recommended by the MDT. Mr. Skinner stated the DOC has staffing issues and there is a two to three year waiting list to participate in some mental health classes. Furthermore, because of the nature of his offense, he has to be housed in a certain facility, and many of these programs are not available to him.

Dwight Holden, Chairperson, Board of Parole spoke in opposition to a commutation. He advised that during his evaluation, his Board asked Mr. Skinner why he should be considered for a commutation, especially since he caused the death of one person and injured several others. His comment was because he is not doing drugs or drinking. Mr. Holden said that his Board's concern was Mr. Skinner's mental health and whether he would commit a similar offense should he be released. He opined that in considering a reduction in Mr. Skinner's sentence to 26 years with good time down to 20 years, the question should be whether the applicant participated in AA, mental health programs, and anger management. When asked whether the Board of Parole would consider a different number other than a 26 year reduction, Mr. Holden said there was a good possibility considering some of the programs the applicant had completed; however, he said that he could not state what that number might be. Mr. Holden noted that he would like to see Mr. Skinner go through additional programs in order to decrease his chance of recidivism.

Mr. Oberly stated that the applicant did not have any problems taking any of the programs recommended to him. He added that Mr. Skinner fully expects to serve at least ten more years, so all they were requesting that the Board consider a commutation once he has successfully completed the recommended programs. Mr. Oberly reiterated that unfortunately Mr. Skinner has problems participating in some programs because of his confinement status.

The following individuals spoke in opposition to a commutation for the applicant:

Richard Hammelbacher, the victim's older brother, said that his family did not put Mr. Skinner in prison, he did that to himself. Mr. Hammelbacher advised that he was standing up for justice for his brother and the other victims in this case. He added that all his brother has left is justice since he did not get chance to be the man he could have become. His brother did not want to die. Because of Mr. Skinner's actions, his family has one sentence, and "it is all grief." Mr. Hammelbacher stated that in his opinion Mr. Skinner could not do anything, say anything or become anything to get a commutation of any kind. The Judge's sentencing was merciful, just and more forgiving than anything the applicant did on the night of his brother's death.

Rachel Hammelbacher, the victim's mother, advised that one never gets over something like this. Her son's birthday comes and goes, but she doesn't know what he may have become or how



October 27, 2005                                8

many grandchildren she might have had. Ms. Hammelbacher opposes an early release for Mr. Skinner, because, as she stated, her son cannot get an early release.

Hannah Cochran, Ms. Pinder's mother, addressed the Board. She disagreed with a certain statement that Mr. Skinner made. The trailer was her daughter's trailer, and Mr. Skinner's name was not on the registration. Additionally, the applicant made threatening remarks to Ms. Pinder from the moment their relationship ended. Mrs. Cochran stated that she believed he intentionally went over to the house to hurt someone. He had made a threat on the phone that night stating so. She added that under the circumstances of the crimes he committed, he should not be released early.

Donald Cochran, Ms. Pinder's stepfather said that he sympathizes with the Hammelbacher family and supports their feelings. Although their family did not suffer the same type of loss the Hammelbachers did, their lives were changed forever as well. They have had to witness a lot of fear, emotion and hardships Ms. Pinder has suffered over the years as a result of Mr. Skinner's actions. Mr. Cochran advised that he was strongly opposed to any reduction in applicant's sentence.

Daphne Hahn, Ms. Pinder's roommate, said she was a witness to the harassment that happened before the shooting. Her own sister was one of the other wounded victims. Additionally, her year and a half old son was there, and could have been shot. Ms. Hahn stated that Ms. Pinder was the victim along with Mr. Hammelbacher. She added that she did not know of anyone who comes to a home to reconcile a relationship with a gun and if, as Mr. Skinner says, he were going to commit suicide, he would have needed only one bullet. Ms. Hahn said Mr. Skinner should not get a second chance since Mr. Hammelbacher cannot get one. She noted that Mr. Skinner has done well with structure and rehabilitation during his incarceration, so maybe that is where he should remain. In regard to her comments about harassment prior to the shooting, Ms. Hahn said that the applicant called day and night and said he was going to be Ms. Pinder's executioner. Ms. Pinder was very afraid to stay at the house by herself. Mr. Skinner and Ms. Pinder had been separated approximately three months at the time of the offenses. During that time, Ms. Pinder was also dating Mr. Hammelbacher, but it was a relationship they kept secret. Ms. Hahn said that she believes they would have gotten married had Mr. Hammelbacher not been killed.

Mr. Welch said that the State opposes any reduction in this case. He said that the sentence was imposed under Truth In Sentencing guidelines. The premise behind Truth In Sentencing is that one uses the time of incarceration to participate in programs and educational enrichment, but the inmate must serve at least 75% of his/her sentence. The sentence would not get knocked down to 25% of what was originally imposed. Mr. Welch said that the State does not agree with the step by step reduction proposed by Mr. Oberly. He further stated that it was premature to consider any reduction since Mr. Skinner has only served 16 years. Mr. Welch noted that it was the State's assertion that Mr. Skinner was homicidal rather than suicidal at the time of the shooting. This statement was supported by the fact that after the incident, the applicant phoned his mother and asked her to drive him to Maryland. He opined that this does not reflect an individual with suicidal tendencies. Mr. Welch added that the Institution's 2004-2005 MDT (Multi-Disciplinary Team) Report indicated that Mr. Skinner showed no remorse for his victims.

The Board convened into executive session and the following recommendation was made:

**RESOLVED,** that the petition be denied. The reason was the opposition from the State, the victims' families, the Department of Correction and the Board of Parole.

Mr. O'Neill returned to the proceedings and resumed the duties of State's representative.

Chancellor Chandler joined the Board at this point in the proceedings.



FORM #584  Inmate Copy
GRIEVANCE FORM

FACILITY: D.C.C.   DATE: 2-28-05
GRIEVANT'S NAME: STUART Skinner   SBI#: 246587
CASE#: 12093   TIME OF INCIDENT:
HOUSING UNIT: D/W

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED IN THE INCIDENT OR ANY WITNESSES.

On 2-22-04 I was taken to MAX on a snitch note 1 month later Deputy Warden Pierce found me not guilty I spent 4 months in MAX and 2 months in the MHU Then 4 months in C-Bld and now 2 months in D-Bld I only have 5-points I asked for my job back at Maintance or Motor Pool and ask to return to W-Bld to complete my Programs and for no reason they won't let me back to work All of my bosses want and need me back but they wont put me back to work

ACTION REQUESTED BY GRIEVANT: Return to work Return to My Programs in W-Bld

GRIEVANT'S SIGNATURE: Stuart Skinner   DATE: 2-28-05

WAS AN INFORMAL RESOLUTION ACCEPTED?   ___(YES)  ✓ (NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE: ___   DATE: ___

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
    GRIEVANT

April '97 REV   RECEIVED
MAR 02 2005

## Instructions for Submitting a Regular Grievance

Inmates are required, per DOC Procedure 4.4 [Inmate Grievance Procedure] to attempt to resolve complaints prior to filing a regular grievance. Grievances are to be submitted within seven(7) days from the date of the occurance or incident or within seven days after the inmate became aware of the incident. The grievance is to be placed in the grievance box located in each housing unit.

Only one issue per grievance form will be addressed. If the grievance is submitted on a weekend or a holiday, it will be recieved during the next working day.

---

## Return of Unprocessed Grievance

Intake Action: This Grievance Form is being returned to the inmate under the provisions outlined in DOC Procedure 4.4 "Inmate Grievance Procedure" for the following reason(s):

_____ **Vulgar/Abusive or Threatening Language.** The language that is unacceptable has been highlighted. The grievance may be resubmitted omitting this language.

\_\_√\_\_ **Non-Grievable.** This issue has been defined as non-grievable in accordance with DOC Policy 4.4. These procedures have their own appeal process that must be followed.   \_\_\_\_\_Disciplinary Action   \_\_\_\_\_Parole Decision
   \_√\_Classification Action

\_√\_ **Request.** Requests are not processed through the grievance procedure. Please correspond with the appropriate office to secure the information that is requested.

_____ **Duplicate Grievance(s).** This issue has been addressed previously in Grievance # _____ .

_____ **Original Grievances** must be submitted to the Inmate Grievance Chairperson. Photocopies are not accepted.

_____ **Inquiry on behalf of other inmates.** Inmates cannot submit grievances for other inmates.

_____ **Expired filing period.** Grievance exceeds seven(7) days from date of occurrence.

_____
Inmate Grievance Chairperson

**RECEIVED**
MAR 0 2 2005
Inmate Grievance Office

_____
Date

Form#: 584 (F&B)
(Reverse Revised July '99)