IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STUART J. SKINNER, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 06-416-JJF |
| MAJOR DAVE HOLMAN and DEPUTY WARDEN DAVID PIERCE, | : |
| Defendants. | : |

Stuart J. Skinner, Pro se Plaintiff, James T. Vaughn Correctional Center, Smyrna, Delaware.

Catherine C. Damavandi, Esquire, Deputy Attorney General, Delaware Department of Justice. Attorney for Defendants.

**MEMORANDUM OPINION**

December 4, 2009
Wilmington, Delaware

Farnan, District Judge

Presently before the Court is the Motion To Dismiss of Defendants Major David Holman ("Holman") and Deputy Warden David Pierce ("Pierce") (together "Defendants") and Plaintiff Stuart J. Skinner's ("Plaintiff") Response. (D.I. 40, 41.) For the reasons below, the Court will deny the Motion.

I. **BACKGROUND**

Plaintiff, an inmate at the James T. Correctional Center ("VCC"), former the Delaware Correctional Center ("DCC"), Smyrna, Delaware, filed this civil rights action pursuant to 42 U.S.C. § 1983. He appears pro se and was granted in forma pauperis status pursuant to 28 U.S.C. § 1915. (D.I. 4.) The Court screened the case pursuant to 28 U.S.C. §§ 1915 and 1915A on October 20, 2006 and dismissed the claims against Defendants Warden Thomas Carroll ("Carroll") and S/Lt. Porter ("Porter"). Plaintiff was allowed to proceed with retaliation claims against Holman and Pierce, they were served, and answered the Complaint. (D.I. 15, 16, 18.) Plaintiff has not amended his Complaint.

The Court entered a Scheduling Order on September 30, 2008, that set a discovery deadline of December 31, 2008, and a dispositive motion deadline of February 27, 2009. (D.I. 29.) On April 29, 2009, Defendants, noting that the dispositive deadline had expired and that Court approval was necessary, filed a Motion

1

For Leave To File A Motion To Dismiss. (D.I. 38.) The Motion was granted on April 30, 2009. (D.I. 39.)

Defendants move for dismissal on the grounds that the Complaint is legally and factually frivolous pursuant to 28 U.S.C. § 1915(e)(2). (D.I. 40.) Plaintiff opposes the Motion and requests the Court to conduct an in camera review of the standard operational procedures of the VCC. (D.I. 41.)

II. **STANDARD OF REVIEW**

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous. See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d. Cir. 1995). Section 1915(e)(2)(B)(i) requires a district court to dismiss claim if it is plain on the face of the complaint that the claim is frivolous. Gleash v. Yuswak, 308 F.3d 758, 760 (7th Cir. 2002); Lau v. Meddaugh, 229 F.3d 1135 (2d Cir. 2000); Gonzales v. Wyatt, 157 F.3d 1016, 1019-20 (5th Cir. 1998); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). See also Bradley v. Gray, 78 F. App'x 84 (10th Cir. 2003) (not published).

A complaint is frivolous if it "lacks any arguable basis either in fact or law." Denton v. Hernandez, 504 U.S. 25, 31 (1992). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989); Wilson v. Rackmill, 878 F.2d 772, 774 (3d Cir. 1989); see, e.g., Deutsch v. United States, 67 F.3d at 1091-92 (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

The Court is "especially careful when assessing frivolousness in the case of in forma pauperis complaints, for 'prisoners often must rely on the courts as the only available forum to redress their grievances, even when those grievances seem insignificant to one who is not so confined.'" See Deutsch, 67 F.3d at 1090. Because Plaintiff proceeds pro se, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89 94 (2007) (citations omitted).

### III. THE COMPLAINT

Plaintiff alleges that he was housed in the minimum low security housing unit and on February 22, 2004, transferred to the security housing unit ("SHU") pending an internal

3

investigation.  Plaintiff's attorney corresponded with the DCC regarding the transfer to SHU and on March 8, 2004, then Warden Thomas L. Carroll, advised the attorney that Plaintiff had been transferred pursuant to an internal investigation and his housing placement would be reviewed upon completion of the investigation. (D.I. 2, ex. 2.)

On March 25, 2004, Plaintiff was advised by Pierce, who worked for Holman, that Plaintiff was being investigated for an attempted escape.  Pierce found Plaintiff "not guilty" and advised Plaintiff that the next day he would be moved from SHU to the medium high housing unit ("MHU"), but Plaintiff was not transferred to MHU until three months later.  When Plaintiff asked Pierce why he would not be transferred to the minimum security housing unit and returned to his job in the maintenance department, he was told that Holman had said to "let [Plaintiff] phase out."  Plaintiff wrote to his attorney on July 8, 2004, regarding his housing assignment who advised him that he had written two letters to the DCC and agreed with Plaintiff that the process did not seem fair.  (D.I. 2, ex. 3.)  He warned Plaintiff that he wanted to be careful about "pushing too hard" because if he alienated anyone, it might be taken out on Plaintiff.  (Id.)

On August 4, 2004, Plaintiff was transferred to the medium security housing unit and when he asked Pierce when he would be transferred back to the minimum security housing unit and return

4

to work in the maintenance department, he was told to wait a few months for things to cool down. On October 11, 2004, Plaintiff wrote to Pierce in an effort to obtain a transfer to a different building and to get his job back. (D.I. 2, Ex. 5.) The letter states that Plaintiff had been offered four prison jobs, but when Holman was contacted (apparently for approval) he stated that Plaintiff was blackballed and would never work again. (Id.) The letter states that other prison officials would not assist Plaintiff because they are afraid of Holman. (Id.) On December 30, 2004, Plaintiff was transferred to a different building of the medium security housing unit. He again asked Pierce when he would be allowed to return to the minimum security housing unit and return to work in the maintenance department and was told to try to get a job in the kitchen.

Plaintiff filed a grievance on February 28, 2005, complaining of his transfers to different housing units beginning on February 22, 2004, and requested a return to work and a return to the programs in the W-Building. The grievance was returned as "non-grievable." (D.I. 2, Ex. 4.)

On August 4, 2005, Plaintiff was classified to the minimum security housing unit, but in early December he was transferred back to the medium security housing unit. Plaintiff was advised that he had been returned to a higher security level because Holman had held up the classification at the Institutional Base

5

Classification Committee ("IBCC"). Exhibits submitted with the Complaint indicate that the IBCC reviewed Plaintiff's housing status on June 4, 2004, and January 12, 2006. (Ex. 6.) Plaintiff was told that Holman was "messing" with him. Plaintiff alleges that he had no write-ups and there was no reason for him not to return to the minimum security housing unit.

On May 7, 2006, Plaintiff was taken from his cell, all items were removed from the cell, and every item from the cell was searched. On the same date he was strip-searched. When he asked why this was happening, Plaintiff was told by the correctional officer that he "must have an enemy." Plaintiff also alleges he was told these actions "had something to do with an attempted escape." Plaintiff states, "I am certain that if this matter were to be investigated it would be proven that Major Holman is single-handedly responsible for this harassment and abuse of authority."

Plaintiff alleges that on June 9, 2006, his father spoke to Holman regarding Plaintiff's return to work and his father indicated that he planned to call the warden regarding the issue. Plaintiff alleges that Holman told Plaintiff's father that if he called the warden, Holman would "dig in and fight harder, even putting something in [Plaintiff's] cell to set [him] up and have [him] sent back to the SHU."

For relief, Plaintiff seeks compensatory and punitive

6

damages and asks that he not be subjected to retaliatory conduct (i.e., placement in a lock-up unit or administrative segregation, or being subject to excessive shake-downs). (D.I. 2, ¶ V.)

## IV. DISCUSSION

At the outset the Court notes that it has already conducted an initial screening of the case that allowed Plaintiff to proceed with his claims against Holman and Pierce. In that review, the Court determined whether the Complaint was frivolous, malicious, failed to state a claim, or sought monetary relief from a defendant who was immune from such relief. Had the Court determined that the claims against Holman and Pierce were frivolous they would have been dismissed at that time. Additionally, if Defendants disagreed with the Court's ruling, they need merely have filed a motion for reconsideration for the Court to re-visit the issue.

Next, the Court notes that Defendants answered the Complaint prior to filing their Motion to Dismiss. (D.I. 18.) While one of the asserted affirmative defenses is that Plaintiff failed to state a claim upon which relief can be granted, Defendants did not assert an affirmative defense that the claims are frivolous or in bad faith. (D.I. 18, ¶ 12); See Gonzalez v. Feiner, 130 F. App'x 590 (3d Cir. 2005) (not published) (Defendant raised affirmative defense of "the doctrine of frivolous actions"); Gordon v. Lewistown Hosp., Civ. No. 99-1100, 2001 WL 34373013

7

(M.D. Pa. May 21, 2000) (affirmative defense asserts that Plaintiff's claims are frivolous, unreasonable, without foundation and/or in bad faith); Krisa v. Equitable Life Assurance Soc'y, 113 F. Supp. 2d 694 (M.D. Pa. 2000) (affirmative defense asserts the claims are frivolous and made in violation of Fed. R. Civ. P. 11).

Inasmuch as the Complaint did not assert an affirmative defense of frivolousness, typically the Motion To Dismiss would be considered untimely or the defense waived. See, e.g., Fed. R. Civ. P. 12(h); Molnlycke Health Care AB v. Dumex Med. Surgical Products Ltd., 64 F. Supp. 2d 448, 449 n.1 (E.D. Pa. 1999.) (Motion to dismiss for lack of personal jurisdiction, improper venue and failure to state claim would not be dismissed as untimely, though filed after answer to complaint, where answer included those grounds as affirmative defenses.) Defendants, however, were given leave to file the present Motion To Dismiss and their Motion stated that they sought dismissal on the frivolous grounds. (See D.I. 39.)

### A. Law Of The Case Doctrine

The law of the case doctrine "limits relitigation of an issue once it has been decided" in an earlier stage of the same litigation. In re Continental Airlines, Inc., 279 F.3d 226, 232 (3d Cir. 2002). The doctrine is applied with the intent that it will promote finality, consistency, and judicial economy. In re

City of Philadelphia Litig., 158 F.3d 711, 717-18 (3d Cir. 1998). "Reconsideration of a previously decided issue may, however, be appropriate in certain circumstances, including when the record contains new evidence." Hamilton v. Leavy, 322 F.3d 776, 787 (3d Cir. 2003) (citations omitted). "[W]hen the record contains new evidence, 'the question has not really been decided earlier and is posed for the first time.'" Id. (citations omitted). "Accordingly, if the evidence at the two stages of litigation is 'substantially similar,' or if the evidence at the latter stage provides more support for the decision made earlier, the law of the case doctrine will apply." Id. (citations omitted).

Here, the Complaint has not been amended. Indeed, with regard to dismissal nothing has changed since the inception of the case. The Court has already screened the case and allowed Plaintiff to proceed against Holman and Pierce. It determined that other claims raised by Plaintiff were frivolous and dismissed them, but did not dismiss the retaliation claims raised against Holman and Pierce. Notably, the Court identified what appeared to be cognizable retaliation claims against Holman and Pierce. Therefore, the Court will deny the Motion To Dismiss.

**B. Retaliation**

In the alternative, the Court will rule on the merits of the Motion. In support of their claim that the Complaint is factually frivolous, Defendants submit the affidavit of Pierce.

9

(D.I. 40, ex. 1.)  As discussed above, in determining whether a claim is frivolous, the Court looks to the face of the Complaint, not to sworn averments that are not part of the Complaint.  Here, Defendants seek dismissal, not summary judgment, and therefore, the Court will not consider the affidavit as it is not a part of the Complaint.  Therefore, the Court will deny the Motion To Dismiss on the grounds that it is factually frivolous.

A prisoner alleging retaliation must demonstrate (1) constitutionally protected conduct; (2) an adverse action by prison officials "'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights,'" and (3) "a causal link between the exercise of his constitutional rights and the adverse action taken against him." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (citations omitted).  Defendants argue that Plaintiff's Complaint is legally frivolous because Plaintiff is unable to satisfy the first and third prongs required to allege a retaliation claim.  More particularly, they argue that the Complaint does not allege a constitutionally protected activity (i.e., the first prong) or conduct that motivated Defendants to take adverse action (i.e., the third prong).

Attached to the Complaint are exhibits.  The Court considers allegations contained in the other court filings of a pro se plaintiff such as the exhibits attached to the Complaint.  See

Todaro v. Bowman, 872 F.2d 43, 44 n.1 (3d Cir. 1989). The Court has carefully reviewed the exhibits which provide some insight into Plaintiff's claims. Construed in their most favorable light, and assuming the exhibits attached to the Complaint should be considered factual allegations, they indicate that Plaintiff engaged in constitutionally protected activity.

Plaintiff contacted his attorney who, in turn, contacted the DCC regarding Plaintiff's transfer. The United States Court of Appeals for the Third Circuit has held that "official retaliation for the exercise of any constitutional right creates an actionable claim under Section 1983." Feliz v. Kintock Group, 297 F. App'x 131, 137 (3d Cir. 2008) (not published) (citations omitted). Additionally, the Third Circuit, along with other circuits, has recognized that the "right to hire and consult an attorney is protected by the First Amendment's guarantee of freedom of speech, association and petition." Id. (quoting Denius v. Dunlap, 209 F.3d 944, 953 (7th Cir. 2000)); see also DeLoach v. Bevers, 922 F.2d 618, 620 (10th Cir. 1990) ("The right to retain and consult an attorney . . . implicates . . . clearly established First Amendment rights of association and free speech."). Plaintiff also submitted a grievance complaining of his transfer to a more restrictive housing unit. As is well-known, the filing of a prison grievance is a constitutionally protected activity. Robinson v. Taylor, 204 F. App'x 155, 157

11

(3d Cir. 2006) (not published).

Applying the retaliation standard and construing the Complaint liberally, Plaintiff has stated a claim of retaliation for the exercise of his First Amendment rights. Indeed, in light of his assertions, it may be inferred that he was the object of retaliation when he contacted an attorney to assist him in returning to his regular assignment, and after he filed a grievance complaining of his transfers. The Complaint alleges that Defendants were "out to get him," Plaintiff was told by Pierce treated him in a certain way "because he could", Plaintiff was told Holman was "messing" with him, Holman stated that if Plaintiff's father complained to the warden he would "dig in and fight harder" and plant something in Plaintiff's cell so he would be transferred to SHU. See Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002) ("falsifying misconduct reports in retaliation for an inmate's resort to legal process is a violation of the First Amendment's guarantee of free access to the courts."); Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000) (an allegation that a prisoner was kept in administrative segregation to punish him for filing civil rights complaints stated a retaliation claim); Babcock v. White, 102 F.3d 267, 275-76 (7th Cir. 1996) (prisoner could survive summary judgment on his claim that prison officials retaliated against him for "use of the 'inmate grievance system' and previous lawsuits").

12

Additionally, Plaintiff was kept in SHU and MHU for approximate six months. As the Third Circuit has stated, "several months in disciplinary confinement would deter a reasonably firm prisoner from exercising his First Amendment rights." Mitchell, 318 F. 3d at 530. Finally, the Third Circuit has found that the word "retaliation" as used in a pro se complaint sufficiently implies a causal link, the third prong necessary to allege a retaliation claim. See Mitchell, 318 F.3d at 530. Therefore, the Court will deny the Motion To Dismiss on the grounds that the allegations are legally frivolous.

Although Plaintiff's retaliation claim may ultimately not succeed on the merits, it is not "indisputably meritless," "fantastic or delusional," "of little or no weight," or "trivial." Neitzke, 490 U.S. at 325, 327. Applying the retaliation standard and construing the complaint liberally, as the Court must, Plaintiff has stated a claim of retaliation for his exercise of a First Amendment right. For the above reasons, the Court will deny the Motion To Dismiss.

### V. CONCLUSION

For the reasons discussed above, the Court will deny the Motion To Dismiss. (D.I. 40.)

An appropriate Order will be entered.