IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

STUART J. SKINNER,

    Plaintiff,

v.                                                    Civ. No. 06-416-LPS

MAJOR DAVE HOLMAN, et al.,

    Defendants.

Stuart J. Skinner, James T. Vaughn Correctional Center, Smyrna, Delaware, Pro Se Plaintiff.

Catherine C. Damavandi, Esquire, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants.

**MEMORANDUM OPINION**

November 18, 2011
Wilmington, Delaware

[signature]

**STARK, U.S. District Judge:**

## I. INTRODUCTION

Plaintiff, Stuart J. Skinner ("Skinner"), an inmate at the James T. Vaughn Correctional Center ("VCC") in Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983. Skinner appears pro se and has been allowed to proceed in forma pauperis. (D.I. 4) Pending before the Court is Defendants' Motion for Summary Judgment and Skinner's opposition thereto. (D.I. 55) The Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons that follow, the Court will grant Defendants' Motion for Summary Judgment.

## II. BACKGROUND

The Court screened the case pursuant to 28 U.S.C. §§ 1915 and 1915A on October 20, 2006, and dismissed all claims against Defendants Warden Thomas Carroll ("Carroll") and S/Lt. Porter ("Porter"). In the same Order, the Court dismissed due process claims relative to Skinner's housing assignment, security level, and prison employment. The Court also dismissed Skinner's claims challenging the procedures in denying his petition for parole. Skinner was allowed to proceed with retaliation claims against Defendants Major Dave Holman ("Holman") and Deputy Warden David Pierce ("Pierce").[1] (*See* D.I. 11, 12)

The record reflects that Skinner was housed in the minimum low security housing unit but, on February 22, 2004, was transferred to the security housing unit ("SHU") pending an internal investigation. (D.I. 2, D.I. 57 at A3, A13, A59) At the time of the transfer, Skinner worked in the maintenance department. (D.I. 57 at A2) His cell had been searched that day and several contraband items were discovered. (*Id.* at A34) Skinner was charged with possession of

---

[1]Pierce was a lieutenant during the relevant time period.

1

non-dangerous contraband and failure to obey an order. (*Id.* at 31) On February 23, 2004, Skinner pled "not guilty" and a hearing was scheduled. (*Id.* at A31, A35) A disciplinary hearing was held on March 2, 2004, at which Skinner pled guilty to both charges. (*Id.* at A31, A36) Lt. Larry Savage ("Savage") was the hearing officer for the disciplinary hearing. (*Id.* at A31, A35, A36, A59) Pierce was not involved in the disciplinary proceedings. (*Id.* at A59)

As of February 2004, Pierce's duties included security of the VCC. (D.I. 57 at A58) He conducted an internal investigation following the disciplinary hearing to determine whether the items found in Skinner's cell could be used in an escape attempt. (*Id.* at A58-A59) Pierce concluded that the items could likely be used in an escape attempt and that Skinner, who is not scheduled for release until 2033, was possibly planning an escape. (*Id.* at A59) As a result, Skinner remained in the highest security level in the prison and could not keep his job in the maintenance department. (*Id.*)

Skinner alleges that Pierce found him "not guilty" and advised him on March 25, 2004, that he would be moved from SHU to the medium high housing unit ("MHU"), but then Skinner was not transferred to MHU until June 4, 2004. (D.I. 2, D.I. 57 at A13) The June 2004 transfer occurred following Counselor Kramer's ("Kramer") recommendation that Skinner be housed at the medium security level. (D.I. 2 at ex. 6; D.I. 57 at A3) Kramer's recommendation was accepted and adopted by the Institutional Based Classification Committee ("IBCC") with a classification review scheduled for June 2005. (D.I. 2 at ex. 6)

In March 2004, Skinner had asked Pierce why he had not been transferred to the minimum security housing unit and returned to his job in the maintenance department. Skinner was told that Holman had said to "let [Skinner] phase out." (*Id.*) According to Pierce, Skinner

2

was required to work his way down to a lower security level and to reapply for possible employment. (D.I. 57 at A59)

On August 3, 2004, Skinner was transferred to the medium security housing unit. (D.I. 2, D.I. 57 at A13) Skinner wrote to Pierce on October 11, 2004, in an effort to obtain a transfer to a different building and reinstatement to his job. (D.I. 2 at ex. 5) On December 29, 2004, Skinner was transferred to a different building of the medium security housing unit. (*Id.*) From 2005 to the present, Skinner has been housed in general population units. (D.I. 57 at A3) Beginning in January 2005, Skinner worked periodically for the recreation department. (*Id.* at A2) Subsequent to 2005, Skinner has also worked in recreation, as a building worker, and in prison industries. (*Id.*) Skinner trained to transcribe Braille and has been employed as a Braille transcriber since April 2009. (*Id.*)

Plaintiff submitted a grievance on March 28, 2005, complaining of transfers to different housing units beginning in February 22, 2004; he also requested return to work and return to programs in the W-Building. (D.I. 2 at ex. 4; D.I. 57 at A27) The grievance was returned as "non-grievable." (*Id.*) According to Ron Hosterman ("Hosterman"), at the time the grievance was submitted, Skinner was housed in a lower level security assignment and was receiving opportunities for employment. (D.I. 57 at A2-A3) Cpl. Matthew Dutton ("Dutton") states the grievance was not timely filed (although the grievance does not indicate it was rejected as untimely). (*Id.* at A17, A27)

In early December 2005, after he had been housed in minimum security for a short time, Skinner was returned to the medium security housing unit. (D.I. 2) Skinner was advised by Captain Hazard ("Hazard") that he had been returned to a higher security level because Holman

3

had held up the classification at the IBCC. (*Id.*) Skinner alleges that Hazard told him Holman was "messing" with him, that he had no write-ups, and there was no reason for him not to return to the minimum security housing unit. (D.I. 2) The IBCC reviewed Skinner's classification on January 12, 2006. (*Id.* at ex. 6) Skinner was transferred to minimum security on January 23, 2006. (*Id.* at A-12)

According to Skinner, on May 7, 2006, he was taken from his cell, all items in the cell were removed and searched, and he was strip-searched. (D.I. 2) When he asked why this was occurring, Skinner was told by the correctional officer that he "must have an enemy." (*Id.*) Skinner alleges that he was told these actions "had something to do with an attempted escape," and states, "I am certain that if this matter were to be investigated it would be proven that Major Holman is single-handedly responsible for this harassment and abuse of authority." (*Id.*)

Skinner alleges that on June 9, 2006, his father and Holman spoke about Skinner's return to work, and Skinner's father indicated that he planned to call the warden regarding the issue. (*Id.*) According to Skinner, Holman told his father that if he called the warden, Holman would "dig in and fight harder, even putting something in [his] cell to set [Skinner] up and have [him] sent back to the SHU." (*Id.*)

## III. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the clams in question. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a

4

dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989). Pursuant to Rule 56(c)(1), a non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ."

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 247-49; *see also Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87 ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

5

Defendants move for summary judgment on the grounds that: (1) Skinner is unable to establish any elements that give rise to a retaliation claim; (2) Skinner's relocation to higher security was due to the legitimate penological interest of addressing and preventing his escape from the VCC; (3) Skinner failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA); (4) Skinner did not appeal the disciplinary decision stemming from the February 22, 2004 incident that caused transfer to higher security; and (5) Defendants are immune by reason of qualified immunity. Skinner opposes the motion.

## IV. DISCUSSION

### A. Waiver

In its screening Order, the Court liberally construed the Complaint and dismissed all claims other than the retaliation claims against Holman and Pierce. Skinner's opposition states, however, that "the truth is that the Plaintiff never alleged that he was retaliated against." Skinner goes on to state, "the defendants are being accused of violating the Plaintiff's due process rights, and for going outside of their own policies and procedures in punishing the Plaintiff." (D.I. 62)

Inasmuch as Skinner now asserts that he never raised retaliation claims, the Court finds the claims waived. *See generally Brown v. Johnson*, 116 F. App'x 342, 345-46 (3d Cir. Nov. 18. 2004) (not published) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal.") (quoting *Liberles v. County of Cook*, 709 F.2d 1122, 1126 (7th Cir. 1983)); *see also United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal.")

6

Skinner has waived his retaliation claims and provides no reason why summary judgment should not be entered on behalf of Defendants. In addition, the record before the Court does not contain proof from which a reasonable jury could find the elements of retaliation: (1) that Skinner engaged in protected activity; (2) was subjected to adverse actions by a state actor; or (3) that the protected activity was a substantial motivating factor in Defendants' decision to take adverse action. *See Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).[2] Accordingly, the Court will grant Defendants' Motion for Summary Judgment.

### B. Due Process

In his opposition, Skinner contends that Defendants violated his right to due process, when he was charged with prison violations and transferred to a higher security level that caused him to lose his prison employment. He further claims that Defendants violated their own policies and procedures.

Skinner's due process claims are not before the Court. The due process claims were dismissed at the screening stage, and Skinner did not seek reconsideration of their dismissal. (*See* D.I. 11, 12) Further, the evidence of record indicates that neither Holman, nor Pierce, were involved in Skinner's disciplinary hearing or the classifications decisions. (*See* D.I. 57 at A-59) Finally, Skinner argues that Defendants violated their own policies and procedures. However, the mere failure of prison officials to follow their own regulations is not, by itself, a

---

[2]Notably, Skinner failed to refute the evidence of record that the actions of which he complains were taken to advance the legitimate goals of the safety and security of the institution to prevent escapes from the VCC. Prison administrators are accorded wide-ranging deference in the adoption and execution of policies and practices that are needed to preserve internal order and to maintain institutional security. *See Bell v. Wolfish*, 441 U.S. 520, 527 (1979).

7

constitutional violation. *See Davis v. Wilson*, Civ. No. 08-589, 2009 WL 688912, at *8 (W.D. Pa. Mar. 12, 2009); *Estrella v. Hogsten,* Civ. No. 06-1340, 2007 WL 2065879, at *7 (M.D. Pa. July 16, 2007).

Skinner's due process claims were dismissed by this Court. His attempts to reinstate the claims fail.

V. **CONCLUSION**

For the above reasons, the Court will grant Defendants' Motion for Summary Judgment.[3] An appropriate Order follows.

---

[3]Because Skinner has waived the retaliation issue and there is no merit to his due process claims, the Court sees no need to discuss Defendants' positions that their actions were based upon legitimate penological interests, Skinner failed to exhaust his administrative remedies, or that Defendants are immune from suit by reason of qualified immunity.